Geraldine CLEMMONS et al., Plaintiffs-Appellants,

v.

Gerald CRENSHAW et al., Defendants-Respondents.

No. 35049.

Missouri Court of Appeals, St. Louis District, Division One.

June 18, 1974.

Margaret Bush Wilson, St. Louis, for plaintiffs-appellants.

Louis Gilden, St. Louis, for defendants-respondents.

DOWD, Chief Judge.

Plaintiffs appeal from a Circuit Court order dismissing their petition for a declaratory judgment and a temporary restraining order. The issue at trial was whether plaintiffs or defendants are the duly elected officers of the Pruitt-Igoe District Community Corporation (hereinafter referred to as PIDCC), a Not for Profit Corporation organized in 1969 under Chapter 355, RSMo 1969, V.A.M.S.

On March 30, 1972, plaintiffs were elected officers of PIDCC by the Board of Directors. During the next three months, however, a certain amount of animosity developed between plaintiff Hammond, the Chairman, and some other members of the board over Hammond's general conduct of the corporation's business and, particularly, the use of a building. This conflict resulted in a stormy meeting of the Board of Directors on June 22, 1972. Hammond adjourned the meeting on his own motion after he had lost control of the proceedings. Leaving the meeting with Hammond were plaintiffs Mason and McCowan, plus four other board members and one observer. The nine board members remaining continued the meeting with a new acting chairman and vice-chairman.

The ill feeling between the two factions continued into July, 1972. Hammond announced by letter on July 17 that the regular PIDCC directors meeting would be held at 7:00 p. m. on July 20, 1972, at 2330 Cass Avenue. In this letter from Hammond to the board members was the statement: "PLEASE NOTE CHANGE OF MEETING PLACE." The registered office of PIDCC was 2107 Cass Avenue, which was also the regular meeting place for the board of directors.

On July 19 five board members (defendants Harris, Stewart, Taylor, Barge, and Turner) sent the following letter to all board members:

> The Chairman called a Board Meeting for Thursday July 20, 1972 at 7:00 p. m. to be held at 2330 Cass Ave., in the recreation room.

> Our Chairman Mr. Hammond, was called by one of the Board Members Mr. Ronald Stewart, July 19, 1972 approxi-

mately about 1:05 p. m., to advise him of the majority's decision of the meeting site to be changed and asked him to change the meeting place back to the regular meeting at the Gateway Center, 2107 Cass Avenue.

Mr. Hammond's response was he was not changing the meeting place, and you do not have to come if you do not want to.

We the majority, requesting that the Board Meeting be held as always at the Gateway Center 2107 Cass Avenue Thursday July 20, 1972 promptly at 7:00 p. m.

Very important topics to be discussed are:

1. Chairman not cooperating with the Board Members

2. Summer Program

3. Bi-Laws for the Corporation

In accordance with this letter, a meeting of the members of the board of directors was held on July 20, 1972, at 2107 Cass Avenue. Plaintiff Mason, who was Hammond's Vice Chairman, attended but did not vote or sign the attendance sheet. Mason was asked to conduct the meeting in the Chairman's absence, but she refused. The meeting was largely devoted to a discussion of Hammond's alleged faults. A motion to "recall" Hammond was carried by all sixteen members present;[1] defendant Crenshaw was then elected to complete Hammond's unexpired term by a 16 to 0 vote. A motion to recall Mason as Vice Chairman was carried by a 14 to 2 vote; defendant Barge was unanimously elected to fill Mason's unexpired term.

On September 26, 1972, defendant Harold Antoine, the general manager of the Human Development Corporation of Metropolitan St. Louis, notified Crenshaw that his organization recognized the legitimacy of the July 20 elections. This recognition was important because the St. Louis Model City Agency had agreed to recognize the same group of officers the Human Development Corporation recognized.

Plaintiffs subsequently filed suit asking (1) for a declaratory judgment that they were the legally elected officers of PIDCC and (2) for an order temporarily restraining defendants from conducting PIDCC business.

The trial court found:

. . . that Gerald Crenshaw, defendant, was duly elected as Chairman and Delores Barge, Defendant, was duly elected Vice Chairman of the Pruitt Igoe District Community Corporation on July 20, 1972, at a meeting of the Board of Directors of said corporation which was convened and conducted in accordance with the bylaws then and there in effect, and in accordance with the laws of this State.

■ In this court tried case, we do not disturb the findings and judgment of the trial court unless clearly erroneous, and we review the case upon both the law and the evidence. Rule 73.01(d), V.A.M.R.; Smith v. Equitable Life Assurance Society of United States, 448 S.W.2d 588 (Mo.1970). We have reviewed all of the evidence and have concluded that the findings of the trial court are supported by the evidence and not clearly erroneous.

■ Plaintiffs raise three points on appeal: one, trial court erred in holding that defendants Crenshaw and Barge were duly elected as officers of the Pruitt Igoe District Community Corporation on July 20, 1972; two, trial court erred in holding that the meeting conducted by defendants was convened and conducted in accordance with the bylaws of the corporation and the

---

1. Thirteen members were present and three voted by proxy.

laws of the State; and, three, plaintiffs have no adequate remedy at law. Stated another way, plaintiffs contest the legality of defendants' July 20th meeting, their removal as officers, and defendants' election as officers.

The first finding contested by the plaintiffs, in order of occurrence, is that the meeting of the Board of Directors conducted by defendants at 2107 Cass was not convened according to the bylaws of the corporation and the laws of Missouri. Plaintiffs' attack upon the validity of the meeting held at 2107 Cass Avenue is based on the assumption that defendants' letter regarding the meeting was insufficient notice. The real issue, however, is whether the Chairman was authorized to change the place of the regular meeting of July 20th to 2330 Cass Avenue. Here, the defendants met at the time and date provided in the notice sent by the Chairman. They simply met at the regular place of meeting instead of the address specified in the Chairman's notice. The record indicates that the regular place of meeting was 2107 Cass Avenue, even though a prior meeting was held at 2330 Cass Avenue. Our examination of the bylaws and the relevant statutes fails to disclose any authority for the Chairman to change the place of meetings of the board of directors. Likewise, there was no contention or proof offered that there was no quorum of the board of directors at the July 20th meeting at 2107 Cass Avenue. Therefore, we believe that the trial court was not clearly erroneous in holding that the meeting at 2107 Cass Avenue was convened and conducted in accordance with the bylaws and the laws of this state. This for the reason we do not believe the Chairman had the authority either from the bylaws or the statutes, to change the place of the regular meeting to 2330 Cass Avenue.

As we have noted, there is no bylaw empowering the chairman to change the place of meeting, nor is there a statute allowing him to do so. Here, in the absence of a bylaw designating the place of meetings of the board of directors, the statute requires a resolution of the board of directors or the written consent by the directors to designate the place of such meetings. § 355.-145 RSMo 1969, V.A.M.S. There is no such resolution or written consent in this record. Plaintiffs' attempt to change the meeting place does not meet these requirements. Thus, the trial court was not clearly erroneous in holding that the meeting of the board of directors was legally convened.

Plaintiffs also contend that even if a valid meeting was held on July 20th, their removal and defendants' election at the July 20th meeting was illegal because proxies were used and the bylaws do not provide for proxy voting. Plaintiffs are correct in their reading of the bylaws, but we fail to see why the whole election should be voided.

Section 355.150 RSMo 1969, V.A.M.S., requires that, ". . . The act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors, unless the act of a greater number is required by this chapter, the articles of incorporation, or the bylaws." We have found the bylaws in the instant case to require a $\frac{2}{3}$ vote of those present and voting to remove an officer. Thirteen directors appeared personally at the meeting of July 20th, and three by proxy. Even disregarding the three proxy votes, 13 directors voted to remove Hammond and 11 voted to remove Mason, both of which were greater than the requirements of the bylaws for the removal of officers, i. e., $\frac{2}{3}$ of those present and voting. Subsequently, the election of Crenshaw and Barge was also valid, since all those directors present voted in favor of these officers. We hold that the trial court was not clearly erroneous in finding defendants Crenshaw and Barge to be legally elected, since the vote by three proxies did not affect the outcome of ei-

ther the vote to remove plaintiffs or the vote to elect the defendants.

Plaintiffs' last point is that they have no adequate remedy at law. This point is in response to defendants' allegation that quo warranto would have been plaintiffs proper vehicle to challenge the election. Since the trial court did not deny plaintiffs' petition on the grounds of an adequate remedy at law, and since the trial court made full findings against plaintiffs on the merits, and since we can find no error in the findings of the trial court, we need not reach the issue as to whether plaintiffs legal remedy would have been adequate.

The order denying plaintiffs' petition for relief is affirmed.

SIMEONE and WEIER, JJ., concur.